UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Trauben & Company, Inc., d/b/a
QMI Group, a Michigan corporation,

    Plaintiff,

v.                                              Case No. 11-12619

The Merchant of Tennis, Inc., d/b/a US        Honorable Sean F. Cox
Merchants, a California corporation,

    Defendant.
_____/

## OPINION & ORDER DENYING
## DEFENDANT'S MOTION FOR DISMISSAL OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE

Plaintiff Trauben & Company, Inc. ("Plaintiff") filed this action against Defendant The Merchant of Tennis, Inc. ("Defendant"), alleging it is owed unpaid commissions on sales of Defendant's products. The matter is currently before the Court on Defendant's Motion for Dismissal Or, In The Alternative, For Change Of Venue. In this motion, Defendant asks the Court to: 1) dismiss this case for lack of subject matter jurisdiction; 2) dismiss this case for lack of personal jurisdiction; 3) dismiss Plaintiff's claims under Michigan's Sales Representative Commissions Act because Defendant is not a "principal" under the Act; 4) dismiss Counts III and IV because Plaintiff relies on the existence of an express contract covering the same subject matter; or 5) transfer this case to the Central District of California, pursuant to 28 U.S.C. § 1404(a). The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the

1

motion will be decided upon the briefs. For the reasons set forth below, the Court shall DENY Defendant's motion in its entirety.

## BACKGROUND

Plaintiff's Complaint asserts the following four Counts: "Breach of Contract" (Count I); "Violation of MCL 600.2961 – The Michigan Sales Representative Commission Act" (Count II); "Procuring Cause Doctrine" (Count III); and "Unjust Enrichment" (Count IV). Count I, Plaintiff's Breach of Contract claim, is based upon an express written contract. Counts III and IV are expressly pleaded "in the alternative" to the Breach of Contract claim.

Defendant filed the instant motion pursuant to FED. R. CIV. P. 12(b)(1) (lack of subject matter jurisdiction), (b)(2) (lack of personal jurisdiction) & (b)(6) (failure to state a claim upon which relief may be granted). Defendant's motion alternatively asks the Court to transfer the action to California, pursuant to 28 U.S.C. § 1404(a).

In opposition to Defendant's Motion, Plaintiff submitted a Declaration from Jeffrey Trauben, Plaintiff's President whose responsibilities include managing Plaintiff's day-to-day operations. (Trauben Decl. at ¶¶ 2-3). Trauben's Declaration states the following as to the creation of the relationship between Plaintiff and Defendant:

> 4. The first that I heard of the Defendant, The Merchant of Tennis, Inc., doing business as US Merchants, was a telephone call that I received from Denis Karpeles while I was in my office in Michigan.
> 5. Denis Karpeles called me and told me that he was going to go to work for a company out in California, called US Merchants, and wanted to know if my company was interested in acting as a sales representative on their behalf.
> 6. As a follow-up to the telephone conversation, and at Mr. Karpeles suggestion, I flew out to California to meet with Denis Karpeles to discuss Plaintiff representing US Merchants.
> 7. The parties' final agreement was actually discussed, negotiated, and completed over the telephone and via electronic mail – with me here in my

> Michigan office.

(*Id*. at ¶¶ 4-7).

Trauben's Declaration states that Defendant had one of Defendant's employees travel to Michigan to help further Plaintiff's sales of Defendant's products in Michigan:

> 15. In July of 2010, Lico Lee, an employee of Defendant, traveled here to Michigan from California (via Chicago), to call on Meijer with me in Grand Rapids, Michigan, in order to sell Defendant's products. A copy of Mr. Lee's itinerary, which was also copied to Denis Karpeles, and apparently approved by Mr. Karpeles, is attached hereto as Exhibit 1C, along with my email to Denis Karpeles confirming Mr. Lee's trip to Meijer.
> 16. In fact, Lico Lee was also the employee of Defendant who sent a proposed Sales Representative Agreement to me via email at my office here in Michigan, on behalf of Defendant, on December 16, 2009, and who also routinely sent product pricing and account information to me at my office throughout the parties' business relationship.

(*Id*. at ¶¶ 15 & 16).

Trauben's Declaration states that Plaintiff never called on any accounts on behalf of Defendant in California. (*Id.* at 8). Trauben states that "[i]n addition to accounts in Illinois, Iowa, Tennessee, and Texas, and pursuant to our agreement with Defendant, we also called upon ABC Warehouse whose corporate offices are located in Pontiac, Michigan, as well as Meijer, located in Grand Rapids, Michigan, to sell Defendant's products here in Michigan." (*Id*. at 9). Attached to Trauben's Declaration "is a copy of one of the purchase orders for products that Defendant had shipped into Michigan to ABC Warehouse, and that [Plaintiff] sold on behalf of Defendant." (*Id*. at ¶10; Ex. 1A). That "purchase order includes the sale of ViewSonic Tablets, which are the subject of the present action." (*Id*. at ¶ 11).

## ANALYSIS

**A.     Should This Action Be Dismissed For Lack Of Diversity Jurisdiction?**

Defendant contends that this Court should dismiss this action for lack of subject matter jurisdiction because diversity jurisdiction does not exist. Defendant concedes that diversity of citizenship exists among the parties but asserts that Plaintiff "has not made any showing that the amount in controversy exceeds $75,000." (Def.'s Br. at 4).

Plaintiff's Complaint alleges that Defendant owes it money damages "in an amount in excess of $75,000.00." (Compl. at 6). Moreover, Plaintiff's Response Brief attaches invoices indicating that it has demanded in excess of $80,000.00 from Defendant. The Court shall DENY this ground for relief because the Court is satisfied that diversity jurisdiction exists.

**B.     Does This Court Lack Personal Jurisdiction Over Defendant?**

Plaintiff bears the burden of establishing that this Court has personal jurisdiction over Defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Where, as here, a district court "relies solely on written submission and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). "In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.*

Personal jurisdiction over an out-of-state defendant arises from certain minimum contacts with the forum state such that maintenance of the suit does not offend "traditional notions of fair

4

play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." *Air Products and Controls, Inc.,* 503 F.3d at 550. General jurisdiction depends on a showing that the defendant has continuous and systematic contacts with the forum state to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). Specific or limited personal jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.*

While Plaintiff asserts that it believes there are sufficient contacts for general jurisdiction over Defendant, it focuses its response on specific jurisdiction. Thus, Plaintiff asserts that specific jurisdiction exists over Defendant.

A district court's analysis of personal jurisdiction generally entails two steps: 1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, 2) the court must determine whether the exercise of that jurisdiction comports with constitutional due process. *Id.*

**1.    Does Michigan's Long-Arm Statute Authorize Jurisdiction?**

Plaintiff asserts that this Court has specific or limited jurisdiction over Defendant because this action arises out of Defendant's "transaction of any business within the state" under M.C.L. § 600.715(1). The Court agrees.

The first statutory criterion for finding limited personal jurisdiction under this prong of
5

Michigan's long-arm statute requires the "transaction of any business within the state." *Id.* The word "any" includes "each" and "every," and comprehends even the "slightest" amount of business. *Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir. 1988). Thus, if Defendant conducted even the slightest act of business in Michigan, the above statutory criterion for personal jurisdiction is met.

Here, taking the assertions in Trauben's Declaration as true, Defendant has conducted business in Michigan because it contracted with Plaintiff to call on customers located in Michigan and Plaintiff made sales to a Michigan customer.

    **2.**    **Does Exercise Of Jurisdiction Comport With Due Process?**

The Sixth Circuit has established a three-part test for determining whether the exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). While these criteria are helpful, courts are not to "apply them mechanically because the inquiry into whether jurisdiction exists turns on the facts of the individual case at hand." *Chrysler Corp. v. Uptown Motorcars-Hartford, Inc.*, 173 F.3d 854, 1999 WL 196558 (6th Cir. 1999).

    **a.**    **Purposeful Availment**

The purposeful availment requirement is satisfied when the defendant's contacts with the

forum state create a substantial connection with the forum state and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). Purposeful availment is required to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Id*.

"In describing when a party has purposefully directed its activities toward the forum state, the Supreme Court in *Burger King* stated that 'with respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Id*. (Quoting *Burger King Corp. v. Rudzewski*, 471 U.S. 462, 473 (1985)).

The purposeful availment requirement "does not, however, mean that a defendant must be physically present in the forum state. As the *Burger King Corp.* Court stated, 'So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Compuserve, Inc*., 89 F.3d at 1264 (quoting *Burger King Corp.,* 471 U.S. at 476).

The existence of a contract with a resident of the forum, by itself, is not a sufficient basis for this Court to exercise jurisdiction over a defendant. *Burger King Corp.*, 471 U.S. at 478. The *Burger King* Court "rejected a 'mechanical' approach which would find jurisdiction based solely on the existence of a contract with an out-of-state party in favor of a 'highly realistic' approach that looks to the negotiations, contemplated future consequences, the terms of the

7

contract, and the course of dealing between the parties." *Chrysler Corp. v. Uptown Motorcars-Hartford, Inc.*, *supra*, at *4 (Quoting *Burger King*, 471 U.S. at 478-79). This highly realistic approach "recognizes that a 'contract' is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479.

Viewing Trauben's Declaration in the light most favorable to Plaintiff, the purposeful availment requirement is met. Defendant reached out to Plaintiff, in Michigan, to inquire if Plaintiff was interested in acting as a sales representative for Defendant. The alleged contract involved a continuing relationship with a Michigan company. Trauben signed the alleged written contract in Michigan and the parties agreed that Plaintiff would call on two customers in Michigan – ABC Warehouse and Meijer. Defendant also sent one of its representatives to Michigan to assist Plaintiff in calling on Meijer in Michigan. Moreover, Plaintiff made sales to a Michigan customer and Defendant shipped its products to Michigan.

        **b.**        **Arising Out Of Requirement**

The second prong of the test is that the cause of action must arise from Defendant's contacts with the forum state. The Sixth Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of, the defendant's contacts, *Lanier*, 843 F.2d at 909, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state., *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003)." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007); s*ee also Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) ("If a defendant's contacts with the forum state are related to the operative facts

of the controversy, then an action will be deemed to have arisen from those contacts.")

In addition, the Sixth Circuit has "characterized this standard as a 'lenient standard' and has explained that the cause of action need not 'formally' arise from defendant's contacts." *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). This lenient standard is satisfied here, where Plaintiff alleges that Defendant owes it unpaid sales commissions on products it sold in Michigan on Defendant's behalf.

### c. The Reasonableness Requirement

In determining whether the exercise of jurisdiction is reasonable, the court should consider the following factors: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; and 4) other states' interests in securing the most efficient resolution of the controversy. *Air Prods. and Controls, Inc.*, 503 F.3d at 554.

Where, as here, the first two prongs are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Id.* This is not an unusual case.

Moreover, consideration of the factors above does not warrant a finding of unreasonableness. While it may be somewhat burdensome for Defendant to litigate in Michigan, it knew when it entered into a continuing relationship with Plaintiff, and when it assigned Plaintiff Michigan customers, that it was making a connection with company headquartered in Michigan. In addition, Michigan has a strong interest in resolving a dispute involving a corporation that is located in Michigan.

Accordingly, the Court shall DENY Defendant's motion to dismiss for lack of personal jurisdiction.

## C. Is Defendant A "Principal" For Purposes Of The MSRCA?

Among other things, Plaintiff alleges that Defendant violated the Michigan's Sales Representative Commissions Act, M.C.L. § 600.2961 *et seq*. ("the Act"). The Act provides for certain remedies for sales representatives against their principals. The Act defines the term "principal" as follows:

> (d) "Principal" means a person that does either of the following:
>
> (i) Manufactures, produces, imports, sells, or distributes a product in this state.
> (ii) Contracts with a sales representative to solicit orders for or sell a product in this state.

M.C.L. § 600.2961(d).

In its motion, Defendant asserts that the Act does not apply to it because Plaintiff "does not assert that its claims arise out of any sales in Michigan." (Def.'s Br. at 8). Although this ground for relief was brought pursuant to FED. R. CIV. P. 12(b)(6), Defendant then asks the Court to consider an affidavit from Defendant's Director of Sales that states "upon information and belief" that the products underlying Plaintiff's claims for unpaid commissioners were for products sold to customers in Texas and Illinois.

The Court shall DENY this ground for relief. The motion was brought pursuant to Fed. R. Civ. P. 12(b)(6) and therefore challenged the pleadings. Plaintiff's Complaint alleges that Defendant "is a principal within the meaning of the Act," and alleged that "[a]t all times pertinent hereto, Defendant manufactured, produced, imported, sold or distributed a product in the state of Michigan." (Compl. at ¶¶ 23 & 24). Thus, Plaintiff has sufficiently alleged that Defendant is a principal under the Act.[1]

---

[1] In addition, in its Reply Brief, Defendant acknowledges that it sold products in Michigan. (Def.'s Reply Br. at 1).

**D.     Should Counts III Or IV Be Dismissed Because Plaintiff Relies On The Existence Of An Express Agreement?**

Next, Defendant contends that the Court should dismiss Counts III and IV because Plaintiff relies on the existence of an express written contract that covers the same subject matter, thereby foreclosing any implied contract claims. The Court shall DENY this ground for relief.

Again, Plaintiff's Breach of Contract claim is based upon an alleged express written contract between the parties. Counts III and IV are expressly pleaded "in the alternative" to the Breach of Contract claim. As the authority relied on by Defendant makes clear, alternative pleading of an implied contract claim is allowed where a party doubts or disputes the existence of an express contract. *Advanced Plastics Corp. v. White Consol. Industries, Inc*., 828 F.Supp. 484, 491 (E.D. Mich. 1993). Here, instead of an Answer, Defendant filed the instant Motion to Dismiss. Defendant has not yet admitted the existence of an express written contract that governs Plaintiff's claims. As such, Plaintiff may plead implied contract claims in the alternative.

**E.     Should The Court Transfer This Case To California?**

Finally, Defendant asks this Court to transfer this case to the Central District of California, pursuant to 28 U.S.C. § 1404(a).

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) gives district courts discretion to transfer cases on an

individual basis by considering convenience and fairness. *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).

In deciding a motion to transfer venue, the Court must determine whether the action could have been brought in the proposed transferee district, whether a transfer would promote the interests of justice, and whether a transfer would serve the parties' and witnesses' convenience. *United States v. P.J. Dick, Inc.*, 79 F.Supp.2d 803, 806 (E.D. Mich. 2000). The factors that may be considered include: 1) the convenience of the parties and witnesses, 2) the location of documents and the relative ease of access to sources of proof; 3) the locus of the operative facts; 4) availability of process to compel attendance of witnesses; 5) the cost of obtaining witnesses; 6) the forum's familiarity with the governing law; 7) the weight accorded the plaintiff's choice of forum; 8) trial efficiency; and 9) the interests of justice. *Id.*

The moving party carries the burden of demonstrating that, in light of these factors, fairness and practicality "strongly favor" the forum to which transfer is sought. *IFL Group v. World Wide Flight Services,* 306 F.Supp.2d 709, 712 (E.D. Mich. 2006). Defendant has not met that burden here.

A transfer is not appropriate if the result is to simply shift the inconvenience from one party to the other." *Audi AG and Volkswagen of America v. D'Amato,* 341 F.Supp.2d 734, 751 (E.D. Mich. 2004). That is precisely what this Court would be doing if it were to grant this motion. Plaintiff is located in Michigan and thus Michigan is a more convenient forum for Plaintiff, where its employees and/or independent contractors and its own documents are located. Defendant, on the other hand, is a California company and thus California would be a more convenient forum for Defendant, where its employees and its own documents are located.

Defendant's motion does not identify any witnesses it intends to call who are not employees of the parties (ie., third-party witnesses). Plaintiff, however, states that it intends to call third-party witnesses:

> Other witnesses located here in Michigan include persons from ABC Warehouse, such as Robert Fraser, the Buyer from ABC, who can testify regarding our sales efforts on behalf of Defendant, as well as the products that Defendant sold and shipped here in Michigan for which it appears we are still owed a commission.

(Trauben Decl. at ¶ 24).

In addition, while there are other third-party witnesses who may be called, none of those third-party witnesses reside in California. This is because Plaintiff's assigned customers did not include any customers in California. Plaintiff's assigned customers were in Michigan, Illinois, Tennessee, and Texas. Thus, most witnesses from those customers would be either located in Michigan or located closer to Michigan than California.

In addition, the documents retained by the third-party witnesses Plaintiff intends to call will be located in Michigan, Illinois, Tennessee, and Texas.

The Court also rejects Defendant's assertion that the interests of justice require that the case be tried in California because the alleged written contract states that California law applies to claims arising under it. First, if that contract governs the claims in this action, this Court is capable of applying California contract law. Second, the alleged written contract may not govern all or any of Plaintiff's claims. Defendant has not admitted that the alleged written contract is valid and Defendant has asserted that at least some of the alleged commissions Plaintiff claims to be owed are not covered by the alleged written contract. If any of Plaintiff's claims for unpaid commissions are outside of the scope of any written contract, Plaintiff may pursue its alternative counts which include claims asserted under Michigan's Sales

13

Representative Commission Act.

Thus, the Court shall DENY Defendant's request that the Court transfer this case to California.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 17, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 17, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager